## FIRST NAT. BANK OF MONTPELIER v. SIOUX CITY TERMINAL RAILROAD & WAREHOUSE CO. (TRUST CO. OF NORTH AMERICA, Intervener).

### (Circuit Court, N. D. Iowa, W. D. August 27, 1895.)

1. CORPORATIONS—LIMIT OF MORTGAGE INDEBTEDNESS.

   The Iowa statute provides that corporations organized thereunder must, by their articles of incorporation, fix a maximum of indebtedness, which shall not exceed two-thirds of their capital stock; this provision not to apply, however, where corporate bonds are issued and secured "by an actual transfer of real estate securities," which shall be a first lien on unincumbered real estate, worth at least twice the amount loaned thereon. McClain's Code, § 1611. *Held*, that the execution and delivery by the corporation of a mortgage on its own real estate to secure bonds was a transfer of real-estate securities, within the meaning of the statute.

2. SAME—PRIOR INCUMBRANCES.

   A terminal and warehouse company executed a lease of its property for a term of 100 years, and shortly afterwards mortgaged the same to secure an issue of bonds. The lease and mortgage mutually referred to each other, and the lease contained a provision, with an express covenant by the lessee, for the payment to the trustee under the mortgage of so much of the rental as was necessary to pay interest on the bonds and the costs of the trusteeship. *Held*, that the two instruments were to be construed in pari materia, and that, consequently, the lease was not a prior incumbrance to the mortgage, within the meaning of a statute requiring corporate bonds to be secured by mortgage upon unincumbered real estate. McClain's Code, § 1611.

3. SAME—VALUE OF MORTGAGED PROPERTY—EVIDENCE.

   Upon a question as to whether property mortgaged by a corporation was worth twice the amount of the bonds secured by the mortgage, as required by statute, *held*, that where it appeared that the bonds were sold in open market for from 90 to 95 cents on the dollar, in cash, it could not be held that the security, at the time it was given, did not meet the statutory requirement.

4. SAME—VALIDITY OF MORTGAGE—RATIFICATION.

   The fact that a trust deed to secure bonds was not in strict accordance, in some particulars, with the resolution authorizing it, is not sufficient ground for holding it invalid, where, subsequent to its execution, the board of directors recognized its existence and validity by directing the issuance of the amount of bonds which the deed was given to secure.

5. SAME—PERPETUITIES.

   Where a corporation executed a lease for 100 years, and shortly afterwards a mortgage of the same property, and the two instruments mutually referred to each other, so as to be in pari materia, *held*, that there was no ground for a contention that the estate created by the mortgage could not take effect until the expiration of the lease, and that, consequently, the mortgage was void, as creating a perpetuity.

This was a bill by the First National Bank of Montpelier against the Sioux City Terminal Railroad & Warehouse Company, wherein the Trust Company of North America, as intervener, filed a bill to

foreclose a mortgage securing bonds of the terminal company. The cause was submitted on the pleadings and proofs.

Joy, Call & Joy, for complainant.

John C. Coombs and H. J. Taylor, for defendants.

SHIRAS, District Judge. The Sioux City Terminal Railroad & Warehouse Company was incorporated under the laws of the state of Iowa in August, 1889; and by the articles of incorporation it was empowered to purchase grounds in Sioux City, Iowa, for railway terminal facilities, and to construct the necessary freight and passenger depots thereon, and to build and operate all the railway tracks, sidings, etc., needed for the use of the terminal facilities by any and all railroads coming into Sioux City, and with the further right to construct lines of railway in Sioux City and Woodbury county. The capital stock of the corporation was fixed at $1,000,-000, with the right to commence business when $200,000 of stock should be subscribed. The company acquired certain lands in Sioux City in the latter part of 1889, and in the years 1890–93 it constructed freight and passenger depots and warehouses thereon, with the necessary railway trackage to render the same available for proper use; but the company never built, or in any way acquired, any line or lines of railway except those placed on the terminal grounds in Sioux City. On the 1st day of January, 1890, the company executed a mortgage upon its property within the limits of Sioux City to the Trust Company of North America, as trustee, to secure the payment of $1,250,000, evidenced by 1,250 bonds of $1,000 each. These bonds were sold in open market, realizing from 90 to 95 cents on the face thereof; and the proceeds were used in payment of the property purchased by the terminal company, and in payment of the floating indebtedness of the company, evidenced by notes of the company previously issued, and negotiated through the Union Loan & Trust Company of Sioux City. The interest upon these bonds being in arrears, the trust company has filed a bill in the present case seeking a foreclosure of the mortgage. Prior to the filing of this bill, the terminal company had executed a deed of assignment of all of its property to E. H. Hubbard, for the purpose of securing payment of its then outstanding notes, negotiable through the Union Loan & Trust Company, amounting to about $750,000. In answer to the bill of foreclosure filed by the Trust Company of North America, Hubbard, as assignee, and the terminal company, aver that the mortgage sought to be foreclosed and the bonds secured thereby are invalid and void on several grounds,— the first being that under the statutes of Iowa the terminal company had no power to incur an indebtedness in excess of two-thirds of its authorized capital stock; that the capital stock of the company was fixed in the articles of incorporation at $1,000,000; that the mortgage and issue of bonds covered thereby are for $1,250,000; and that as the statutes of Iowa limit the amount of indebtedness to two-thirds of the capital stock, with certain exceptions named in the statute, the terminal company had no power to give a mortgage for a sum in excess of two-thirds of its authorized capital stock.

The terminal company was created under the provisions of chapter 1, tit. 9, of the Code of Iowa, and chapter 139, Acts 20th Gen. Assem. By the thirteenth article of its charter, it is provided that:

"The highest amount of indebtedness to which this company shall at any one time subject itself shall not exceed two thirds of the amount of the paid up capital stock of the company, aside from the indebtedness secured by mortgage, upon the real estate of the company."

Section 1611, McClain's Code Iowa, provides that:

"Such articles of incorporation must fix the highest amount of indebtedness or liability to which the corporation is at any one time to be subject, which must in no case, except in that of risks of insurance companies, exceed two-thirds of its capital stock. Provided, that the * * *. Provided further, that the provisions of this section shall not apply to the debentures or bonds of any company, duly incorporated under the provisions of this chapter, the payment of which debentures or bonds shall be secured by an actual transfer of real estate securities for the benefit and protection of purchasers of said debentures or bonds, such securities to be at least equal in amount to the par value of such bonds or debentures, and to be first liens upon unincumbered real estate worth at least twice the amount loaned thereon."

For the common benefit and protection of the creditors and stockholders of corporations created under the provisions of chapter 1, tit. 9, of the Code of Iowa, it is first enacted that the limit of authorized indebtedness is fixed at two-thirds of the capital stock; but by the second proviso it is declared that this limitation shall not apply to debentures or bonds secured by a first lien upon unincumbered real estate, worth at least twice the amount loaned thereon. The theory of this section seems to be that, if bonds of the corporation are secured upon real estate worth at least twice the amount loaned thereon, they will be paid out of this security, and thus there will be left for the benefit of other creditors the security derived from the capital stock of the corporation; and therefore, in ascertaining whether the amount of indebtedness to which a corporation may lawfully subject itself under the first paragraph of the section has or has not been exceeded, such secured bonds are not to be taken into account. It has been suggested in argument that a mortgage or trust deed executed by a debtor corporation upon realty owned by it does not come within the terms of the proviso, and that it is only bonds secured by the transfer of other notes, bonds, debentures, or like evidences of debt, secured upon realty not belonging to the debtor corporation, which are intended to be excepted out of the operation of the first clause of the section. It is not to be denied that the language of the proviso gives plausibility to this contention, yet I do not deem it to be the proper construction thereof. The trust deed in question in this case is a real-estate security; the execution and delivery thereof to the trustee was an actual transfer of a real-estate security for the benefit of the purchasers of the bonds described in it; and it thus comes within the class of securities described in the paragraph in question. It thus seems clear that under the provisions of the articles of incorporation of the terminal company, read in connection with the provisions of the Code of Iowa applicable thereto, the bonds in question cannot be held void simply because, in amount, they exceed two-thirds of

the authorized capital stock of the company, for the reason that they are bonds secured by the transfer to the trustee of real-estate security, to wit, a trust deed equal in amount to the par value of the bonds secured thereby. But it is said that the trust deed is not a first lien upon unincumbered real estate, within the requirement of the statute, because of the existence of a lease of the terminal property made by the terminal company to the Sioux City & Northern Railroad Company for a period of 100 years, at the yearly rental of $90,000. This lease bears date of December 14, 1889, whereas the trust deed sought to be foreclosed is dated January 1, 1890; but the provisions of the two instruments show that they were executed with relation to each other, are in that sense in pari materia, and must be construed together, in ascertaining the rights and priorities created thereby. Thus it is recited in the lease that:

"Whereas, the said terminal company, party of the first part, has been vested with power by its stockholders and board of directors to execute and deliver, and will execute and deliver, its first mortgage to the Trust Company of North America, of Philadelphia, Pennsylvania, to secure bonds to an amount not exceeding one million two hundred and fifty thousand dollars, which mortgage is to cover, embrace, and include all of the real estate of said terminal company, and all the rights of way, franchises, and all rights acquired under and by virtue of the said ordinances, assignments, and transfers aforesaid; and whereas, it is further provided in said mortgage, under said power given as aforesaid, that so much rental in this lease provided as shall be necessary to pay the interest upon said bonds, and the necessary costs of trusteeship, shall be paid in quarterly installments to the trustee in said mortgage named."

And, based upon these recitals, the lessee expressly covenants to pay to the Trust Company of North America $75,000 yearly, to apply in payment of the interest of the bonds issued by the terminal company, and also so much additional as might be needed to pay the costs of the trusteeship; it being further provided that in case there should be a failure to pay any part of the stipulated rental, or to pay the interest or principal of the bonds of the terminal company, then the rental coming due from the railroad company, as original lessee, or from any subtenants, should be payable to the trustee in the mortgage for the benefit of the bondholders secured thereby. In the trust deed are found similar recitals touching the lease, and in the granting clause the lease itself is described as part of the rights and property mortgaged for the payment of the bonds. It thus appears that in no proper sense can it be said that the lease is a lien or incumbrance upon the property covered by the trust deed prior to that instrument. To give a value to the terminal property, it was essential that it should be used by some railway for terminal purposes. The company owning it was not operating any line of railway, and therefore the property was without value, and no income could be derived therefrom, unless it was leased to a railway company or companies having lines entering Sioux City. If the trust deed had been first executed and recorded, and then the lease had been executed, containing the provisions now found therein in regard to the payment of rental to the trustee for the benefit of the bondholders, could there be any question that a greatly increased

value would thereby have been given to the mortgagee's interest in the property? The same increase of value is created by the lease as it was executed. Although bearing a date prior to that of the mortgage, it is evident from its terms that it was not intended to create any lien or interest antagonistic or superior to the mortgage. According to its terms, the lessee is bound to pay to the trustee in the mortgage $75,000 annually,—a sum sufficient to pay the yearly interest maturing on the mortgage bonds,—and, in addition, a sum sufficient to pay the costs of the trusteeship. Furthermore, in case of a failure on part of the terminal company to pay either the principal or interest of its bonds, the lease is liable to be sold, through a foreclosure of the mortgage, for the benefit of the bondholders. In fact, the lease was made for the benefit of the bondholders, and does not create any lien or incumbrance that is paramount or superior to the mortgage. The statute also requires that the bonds must be secured on realty worth at least twice the amount secured thereon. What the real value of the property covered by the mortgage is now, or what it was when the mortgage lien thereon was created, is very uncertain, and the opinions of witnesses would very greatly differ with regard thereto. The undisputed fact is that the bonds were sold in open market, and brought in cash, from 90 to 95 cents on the dollar, which demonstrates that the purchasers deemed the security to be ample. The evidence is not such that the court can say that, as values then were in Sioux City, the security did not meet the requirements of the statute. But, if it were true that the security for the bonds was less than that required by the statute, would that fact defeat the lien of the bonds upon the security actually given? In equity, would not the bondholders be entitled to hold the security actually given, and to enforce their bonds against it, even though they might be estopped from enforcing payment against the other property of the corporation? The statute limits the indebtedness that may be lawfully created to two-thirds of the authorized capital stock, and then provides that, in estimating the amount of the indebtedness, bonds secured on unincumbered realty worth twice the amount secured thereon shall not be included. The theory is that bonds thus secured will be paid out of the security, and will not, therefore, come against the general assets of the corporation. Would not the full purpose of the statute be met by holding that in case bonds are sold, based upon security that is not equal in value to that required by the statute, the bondholders can hold the security actually given, and enforce payment against it, but will be estopped, in favor of other creditors, from claiming payment from the other assets of the corporation? But, however this may be, as already said, the evidence is not such as to show clearly that the bonds were issued in violation of the statute in this matter of the value of the security, and therefore the mortgage cannot be held to be void on that ground.

It is further urged in argument that the published notice of incorporation of the terminal company stated the limit of indebtedness to be two-thirds of the authorized capital stock, without containing the exception authorized by the statute, and named in the thirteenth

article of incorporation, to wit, of the bonds secured on realty. A failure to publish the statutory notice of incorporation does not invalidate indebtedness created within the statutory limit, but only renders the stockholders individually liable under the provisions of section 1618, McClain's Code Iowa. If it be true that the notice published did not comply with the requirements of the statute,—which, however, I do not hold,—it would not follow that the trust deed and the bonds secured thereby are void for want of authority to issue them. The authority to issue them is found in the articles of incorporation, read in connection with the statutes of Iowa, and is not dependent upon the character of the published notice. As I gather the facts from the record, there are not presented thereby many of the questions which have been so fully and ably presented by counsel in their oral and written briefs and arguments touching the doctrine of estoppel, the defense of want of authority on part of the corporation to issue these bonds, and other cognate questions, and I am therefore relieved from the duty of reviewing the authorities on these points.

The validity of the trust deed or mortgage is further questioned on the ground that the instrument executed was never authorized by the corporation; that, while it is true the board of directors did authorize the execution of a trust deed, the one in fact executed differs in many particulars from the one authorized, and must therefore be held to be void. It cannot be questioned that the board of directors did expressly authorize the execution of a trust deed to secure bonds in the sum of $1,250,000; that the deed was executed; that subsequently the board of directors adopted the following: "Resolved, that the Trust Company of North America, Philadelphia, trustees under the mortgage made by this company, dated January 1, 1890, be authorized, and they are instructed, to deliver 1,250 bonds of the denomination of $1,000.00, secured by said mortgage, to the order of A. S. Garretson,"—and the said Garretson was empowered to receive and sell the bonds for the benefit of the corporation, which was done. From this it appears that the board of directors knew of the execution of the trust deed of January 1, 1890; that they recognized its validity, and directed the sale of the bonds secured thereby. And hence it must be held that if the trust deed, as executed, differs from that previously authorized by the board, such changes were recognized and approved by the board, and the trust deed, as executed, cannot be said to have been executed without the knowledge, approval, and consequent authority of the board.

It is further earnestly contended by counsel for defendants that the trust deed must be held to be void, and not enforceable in equity, because it is repugnant to the rule against perpetuities. In Gray, Perp. § 201, the rule invoked is stated in the following terms: "No interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest." The theory of counsel is that the interest or estate created by the mortgage rests or is conditioned on the prior term created by the lease; that the lease is for

the period of 100 years; that, as the estate created by the mortgage may not take effect until the expiration of the lease, it must be held to be contrary to public policy, because of the remote period which might thus elapse before the estate would vest.   If it were true that the lease created a prior estate, and that the mortgage could not take effect, and that no interest or estate thereunder could be created or conveyed, until after the termination of the lease, which, by its terms, is for the period of 100 years, then it might be that the objection urged would have force, but I do not deem this to be the true construction of the mortgage and lease in question. The lease, although earlier in date than the mortgage, does not in fact create an interest or estate to be enjoyed prior to the taking effect of the mortgage estate.   The bonds secured by the mortgage mature in 10 years from their date, and, if the interest and principal thereof were paid in accordance with the terms of the mortgage, the mortgage lien would be at an end.   If, however, the bonds should not be paid as provided in the mortgage, then foreclosure proceedings could be had, and by a sale under the terms of the mortgage the fee title of the mortgaged property, together with the lease itself, could be conveyed to the purchaser.   The existence of the lease would not in any manner prevent a foreclosure and sale, and thus a new title would be created under the mortgage.   In other words, the entire purpose of the mortgage could be fulfilled, and the interest, lien, or estate created thereby could be converted into a new title, vested in another party, to wit, the purchaser at the foreclosure sale, within a period falling far short of the 21-years limit named in the rule.   The interest and rights created by the mortgage are not in abeyance until the termination of the lease, nor is the mortgage vested on the lease in such sense that the leasehold forms a condition precedent to the existence or enforcement of the mortgage lien.   The lien of the mortgage took effect upon its delivery and recording, and this lien can now be enforced according to the terms of the mortgage, by a foreclosure decree and sale; and I therefore fail to see why a court of equity should refuse to enforce it on the principle of public policy underlying the rule against perpetuities, as the same exists at common law.   The statute of Iowa upon the subject (section 3091, McClain's Code) declares that "every disposition of property is void, which suspends the absolute power of controlling the same for a longer period than during the lives of persons then in being, and for twenty-one years thereafter."   In Todhunter v. Railroad Co., 58 Iowa, 205, 12 N. W. 267, it was held that "the object of the statute is to prevent property from being taken out of commerce, and prevent it from being held without the power of alienation beyond the prescribed period."   In that case the facts were that the Des Moines, Indianola & Missouri Railroad Company leased its line of railway to the Chicago, Rock Island & Pacific Railroad Company for the term of 999 years, agreeing to pay as rental 30 per cent. of the gross yearly earnings, to be used and applied in payment of the interest accruing on the bonds of the lessor.   It was held that as the lessor could convey the fee title, and the lessee could assign the lease, "and by uniting in a conveyance the lessor

and lessee may freely, and without restraint, convey both the fee and the leasehold interest," the lease, though for 999 years, was not void. In the case now before the court, as a foreclosure decree and sale under the provisions of the mortgage will not only convey the fee title, but also the lease thereon,—thus accomplishing all that the lessor and lessee could do in the Todhunter Case,—it is clear that the mortgage does not prevent an alienation of the property, within the meaning of the statute of Iowa, as construed by the supreme court in the case just cited.

The evidence shows, and the fact is not questioned, that the bonds secured by the trust deed executed to the Trust Company of North America were sold for a fair value to different parties, who bought them relying upon the security afforded by the trust deed in question, and I am not able to find in the provisions of the deed, or in the facts of the case, any reason why these parties should be deprived of the security upon the faith of which they bought the bonds and parted with their money, which, it is admitted, was received by the terminal company. I therefore find and hold that the trust company is entitled to a decree of foreclosure as prayed for.